# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

Nº 08-CV-4894 (JFB)
_____

BAKHOSHEQ ALLAN,

Petitioner,

VERSUS

JAMES CONWAY,

Respondent.

_____

MEMORANDUM AND ORDER
January 10, 2012

JOSEPH F. BIANCO, District Judge:

Bakhosheq Allan (hereinafter, "Allan" or "petitioner"), petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, to vacate his conviction entered in the County Court of the State of New York, County of Suffolk (the "trial court"), for murder in the second degree (N.Y. Penal Law § 125.25(1)). Allan was sentenced to a term of imprisonment of twenty-five years to life.

Allan challenges his conviction on five grounds. Specifically, petitioner asserts that: (1) the evidence was insufficient as a matter of law to support a finding of guilt beyond a reasonable doubt; (2) there was prosecutorial misconduct because (a) various summation comments by the prosecutor deprived petitioner of a fair trial; (b) the prosecution introduced hearsay into evidence and elicited expert testimony from a lay witness; and (c) the prosecution failed to disclose potentially exculpatory material in a timely manner; (3) defense counsel failed to provide effective representation by failing to (a) request an accomplice instruction; (b) request jury instructions on each element of the charged crime; (c) request a hearing regarding identification evidence; (d) object to the trial court's circumstantial evidence instruction; (e) object to the introduction of hearsay testimony, and (f) object to the prosecution's summation; (4) the trial court erred when it (a) improperly instructed the jury regarding circumstantial evidence; (b) failed to instruct the jury that Donald Johnson was an accomplice; (c) shifted the burden of proof in its _Brady_ ruling; (d) allowed the prosecution to introduce hearsay into evidence; and (e) permitted several in-court identifications that lacked an independent

basis; and (5) the trial court improperly denied petitioner a *Wade* or *Rodriguez* hearing. As discussed below, the petitioner has procedurally defaulted on the claims that fall under (2), (4), and (5). In any event, the Court has examined each of the petitioner's claims on the merits and concludes that there is no basis for habeas relief. All of petitioner's claims are without merit. Therefore, the petition is denied in its entirety.

## I. BACKGROUND AND PROCEDURAL HISTORY

Trial began on May 11, 2004. The prosecution presented evidence from twenty-five witnesses[1], ranging from the various people who lived at 28 Cypress Avenue, Flanders/Riverhead, NY ("28 Cypress Avenue"), individuals who had a relationship with the victim, a medical doctor, a detective and several police officers, regarding the events that occurred during the summer of 2001 which ultimately led to the murder of Javon Riddick. Giselle Douglas, Monique Parrish, Kodie Lister, Shaneka Jackson, Dennis Jackson, Gilbert Henderson, and Donald Johnson all testified about their interactions with both petitioner and the victim, and about the lifestyle and events at 28 Cypress Avenue, both in general and on September 7, 2001. Detective Henry Hinssen and Police Officers Eric Plum, Scott Johnson, and Marco Calise testified about the physical evidence recovered from 28 Cypress Avenue, the victim's vehicle, the pond where Donald Johnson dumped the gun, and the statements made at the scene by various members of the 28 Cypress Avenue community regarding Riddick's death.

### A. Background

The following facts are adduced from the instant petition and underlying record.

During the months leading up to September 7, 2001, 28 Cypress Avenue in Flanders, NY was home to a large number of people. (Tr. at 1257-60.)[2] Among the individuals living at the address were Dennis Jackson, his sister Shaneka Jackson and her two children, his brother Philip Jackson, and his cousin Gilbert Henderson and his two children. (*Id.* at 1257.) There were additional people – Gregory Booker, Kodie Lister, Monique Parrish, Tiffany Parrish and Julie Jackson – who stayed at the home from time to time. (*Id.* at 1257-1258.)

Petitioner (a.k.a. "Box") came to the Riverhead area several months before September 7, 2001. (*Id.* at 1260, 1573.) Petitioner split time living at 96 Cypress Avenue with his cousin and aunt, at 28 Cypress Avenue, and in his car. (*Id.* at 1260-61, 1414). Petitioner, Dennis Jackson (a.k.a. "Dune"), Albert Daniels (a.k.a. "Roscoe"), and Donald Johnson (a.k.a. "Pootie") all lived at 28 Cypress Avenue and sold drugs at and around the home. (*Id.* at 993, 997-98, 1161, 1171, 1194-95, 1262, 1330.) Javon Riddick (a.k.a. "Voo") supplied drugs to petitioner, Dennis Jackson, Donald Johnson and Albert Daniels. (*Id.* 1364-65, 1396, 1403-04, 1455-57.)

Approximately one week prior to Riddick's death, petitioner began speaking

---

[1] The following witnesses testified at trial: Detective Henry Hinssen, Police Officer Eric Plum, Jeffrey Luber, Giselle Douglas, Monique Parrish, Police Officer Scott Johnson, Portia Thompson, Lawrence Lister, Kodie Lister, Rachel Moore, Nicole Watson, Police Officer Marco Calise, Shaneka Jackson, Jason Korte, Joseph Pita, Dennis Jackson, Tasheeya Williams, Donna Hobson, Alex Barrell, Gilbert Henderson, Marilyn Dilley, Kim Flores, Donald Johnson, Charles Hopkins, and Dr. Gwen Harleman.

[2] "Tr." refers to the trial transcript.

badly about Riddick,[3] because petitioner suspected that Riddick was shorting him on the drugs he sold to petitioner. (*Id*. at 1416-1418, 1575-77, 1631-32.) Consequently, petitioner told Dennis Jackson and Donald Johnson that he had considered forcibly taking money from Riddick. (*Id*. at 1416-17, 1575-77.)

At 10:30 a.m. on September 7, 2001, petitioner and Donald Johnson met to discuss a .45 caliber handgun that Donald Johnson wanted to buy from petitioner. (*Id*. 1577-78.) Petitioner explained to Donald Johnson that, by the end of the day, he planned to rob Javon Riddick and then leave Riverhead. (*Id*. at 1578, 1580-82.) Petitioner knew that, with the approaching weekend, there would be a greater demand for drugs and Riddick would therefore be carrying a large amount of money.[4] (*Id*. at 1595.) Petitioner followed Donald Johnson, who was driving Albert Daniels' vehicle, to a McDonald's restaurant, where petitioner parked his vehicle, purchased food, and returned to 28 Cypress Avenue with Johnson in Daniels' vehicle. (*Id*. at 1581-85.) During the drive, petitioner placed a call to Javon Riddick on his cell phone. (*Id*. at 1585.)

Javon Riddick was scheduled to work his normal shift at Wal-Mart that evening, starting at 10:00 p.m. (*Id*. at 1370.) Before leaving for work, Riddick stopped at his mother's house and then went to the home of a relative. (*Id*. at 1369-1371.) Since Riddick did not have a driver's license, a friend, Joe Pita, drove Riddick places frequently, operating Riddick's white Mercury Grand Marquis. (*Id*. at 1361.) After Riddick picked up his two young cousins from a nearby relative's house, Joe Pita drove the four of them to 28 Cypress Avenue. (*Id*. at 1367-73.) During the drive, Riddick received a call from petitioner. (*Id*. at 1373-75.) Upon arriving at 28 Cypress Avenue, Riddick entered the home, while Pita and Riddick's two cousins waited in the vehicle for his return. (*Id*. at 1477.)

When Riddick got to 28 Cypress Avenue, most of the residents and some guests were having a party in Dennis Jackson's basement bedroom. (*Id*. at 984-85, 1036-37, 1138, 1421, 1511-13.) The other basement bedroom was occupied by Gregory Booker.[5] (*Id*. at 999.) The partygoers in Dennis Jackson's room were playing music, drinking alcohol and smoking marijuana. (*Id*. at 984, 1138, 1179-80, 1334.)

Riddick entered 28 Cypress Avenue through a side door that opened directly into the kitchen. (*Id*. at 1283-84.) Petitioner, Giselle Douglas and Shaneka Jackson were in the kitchen. (*Id*. at 960-62, 1275-76, 1422.) Petitioner and Riddick went down to the basement, while Giselle Douglas and Shaneka Jackson remained in the kitchen. (*Id*. at 962-963, 1283-84, 1337-38.)

Between one half minute to a minute later, the individuals[6] at 28 Cypress Avenue heard several loud noises. (*Id*. at 964, 1037-38, 1143-44, 1180-82, 1423-25, 1514-15.) Upon hearing the noises, Giselle Douglas and Shaneka Jackson went downstairs into the poorly illuminated, debris-filled basement. (*Id*. at 794-96, 801-802, 935, 963-64, 1289.) Giselle Douglas, being in

---

[3] The court notes that the following facts were drawn from the testimony of Dennis Jackson and Donald Johnson.

[4] The court notes that the following facts were drawn from the testimony of Donald Johnson.

[5] Gregory Booker does not appear to have been present at 28 Cypress Avenue on the night of Riddick's murder.

[6] The Court notes that the following facts were drawn from the testimony of Giselle Douglas, Monique Parrish, Lawrence Lister, Kodie Lister, Dennis Jackson and Gilbert Henderson.

front of Shaneka Jackson, checked Dennis Jackson's room, where no one seemed alarmed. (*Id*. at 964, 985.) When she looked into Booker's bedroom by pushing aside the curtain that separated the room from the remainder of the basement, she saw petitioner standing over the body of Riddick, holding a gun in one hand and patting down Riddick's body with the other. (*Id*. at 964-68, 970-71, 985-86.) Petitioner looked up and made eye contact with Giselle Douglas for one or two seconds before Giselle Douglas turned and ran up the stairs, passing Shaneka Jackson on the way. (*Id*. at 966, 971, 986-87.)

Shaneka Jackson, after also looking in Dennis Jackson's room and noting that the occupants were unperturbed, looked into Booker's room where she saw a Black female outside the door. (*Id*. at 1290-92, 1322.) As the other woman was leaving, Shaneka Jackson peered into Booker's room and saw petitioner standing over Riddick and putting something into petitioner's pants pocket. (*Id*. at 1292-95.) She also saw petitioner search Riddick and remove money from the latter's pocket, put it into his own pocket and exclaim, "Mother f****r, I finally got you." (*Id*. 1293-96.)

After the killing, petitioner approached Joe Pita, who had been waiting in the victim's vehicle with the victim's two nieces in front of 28 Cypress Avenue. (*Id*. at 1377-80, 1477-80.) When petitioner said that Riddick wanted to see Pita, Pita left the car with the key in the ignition and walked towards the house. (*Id*. at 1378-80). One of Riddick's young relatives, Portia, got out of the car, but soon thereafter petitioner sped away in the vehicle with the victim's other young relative, Tasheeya, still inside. (*Id*. at 1107-1111, 1479-80.) Petitioner drove to a Citgo gas station near the McDonald's restaurant in Riverhead where he had parked his car; there, he got out and abandoned the car with Tasheeya remaining inside. (*Id*. at 1480-83.)

Petitioner then walked across the street to the McDonald's parking lot, where he met up with Donald Johnson, who had been waiting for petitioner in the restaurant. (*Id*. at 1483, 1591-92, 1631.) Petitioner handed over the gun, which was in a paper bag, in exchange for $600.[7] (*Id*. at 1593-94). Johnson noticed that the gun smelled like smoke, as if it had been fired. (*Id*. at 1566-67.) Petitioner, who also gave Johnson sixty grams of crack cocaine, stated during the transaction that he "had to clap that n****r . . . [because] . . . he wasn't going to give it to me." (*Id*. at 1594-95.)

Immediately after the comment, the two drove off separately. (*Id*. at 1597.) When Donald Johnson learned from Dennis Jackson about Riddick's death, he hid the drugs behind the house and dumped the gun in a pond near East Avenue. (*Id*. at 1602.)

Before the police arrived at 28 Cypress Avenue, Dennis Jackson noticed approximately 40 grams of crack cocaine and a scale near the victim's body, which he picked up and handed to Joe Pita. (*Id*. at 1190-92, 1439-1442, 1448.) Kodie Lister took Riddick's beeper. (*Id*. at 1190-91, 1195.)

A number of latent fingerprints were recovered from the kitchen table where petitioner was eating his dinner just before the shooting, and from Javon Riddick's vehicle; none of these prints matched petitioner's. (*Id*. at 766-67, 772-776.) Furthermore, despite using scuba divers and metal detectors to search the pond, police could not locate the .45 caliber handgun. (*Id*. at 1635-36.) In addition, when police

---

[7] The court notes that the following facts were drawn from the testimony of Donald Johnson.

initially asked Donald Johnson about the evening's events, he stated that he did not know anything about the events surrounding Riddick's death. (*Id*. at 1604.) It was not until approximately one year later that Johnson brought these allegations forward and the police investigated the scene where Donald Johnson had disposed of the gun. (*Id*. at 1604-05, 1626-29.)

## B. Procedural History

Petitioner was indicted on three counts stemming from his conduct and actions relating to the killing of Javon Riddick. Specifically, petitioner was charged with two counts of murder in the second degree and one count of grand larceny in the fourth degree.

On May 25, 2004, a jury found petitioner guilty of murder in the second degree (N.Y. Penal Law § 125.25(1)). On August 3, 2004, Allan was sentenced to a term of imprisonment of twenty-five years to life. (Petition "Pet." at 1.)

Petitioner appealed his conviction to the Appellate Division, Second Department ("Appellate Division"), on eight grounds: (1) the trial court committed reversible error when it failed to instruct the jury that Donald Johnson was an accomplice as a matter of law; (2) the trial committed reversible error when it failed to give the proper circumstantial evidence charge to the jury; (3) various summation comments by the prosecutor deprived petitioner of a fair trial; (4) the hearing court's *Sandoval* decision was an improper exercise of judicial discretion; (5) the trial court committed error when it admitted the photographs depicting the victim's gunshot wounds into evidence; (6) the defense counsel failed to provide effective representation by failing to request that the court instruct the jury that Donald Johnson

was an accomplice, failing to object to the trial court's circumstantial evidence charge, and failing to object to segments of the prosecutor's summation; (7) the evidence at trial was insufficient to establish petitioner's guilt beyond a reasonable doubt; and (8) the sentence imposed by the trial court was harsh and excessive. (Defendant-Appellant's Brief, N.Y. App. Div. No. 2004-10636.)

On June 19, 2007, the Appellate Division issued a decision affirming the judgment of conviction. *People v. Allan*, 41 A.D.3d 727 (N.Y. App. Div. 2007). The Appellate Division held that, viewing the evidence in the light most favorable to the prosecution, the evidence was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. *Id.* at 771. The court also held that defendant's contention that the County Court's *Sandoval* ruling deprived him of a fair trial was without merit; the trial court properly weighed the probative value of the defendant's prior offenses on the issue of his credibility against the possible prejudice to the defendant, and reached an appropriate ruling. *Id.* The Appellate Division ruled that the court did not err in admitting autopsy photographs into evidence because the photographs were "neither excessively gruesome nor introduced for the sole purpose of arousing the jurors' passions and prejudicing the defendant." *Id.* In addition, the court found that the defendant was not deprived of the effective assistance of counsel, since the record as a whole demonstrated that he received "meaningful representation." *Id.* Moreover, the Appellate Division held that the sentence imposed by the trial court was not excessive. *Id.* The Appellate Division held that the defendant's remaining contentions were unpreserved for appellate review and thus declined to review them. *Id.*

The New York Court of Appeals denied petitioner's application for leave to appeal on September 7, 2007. *People v. Allan*, 912 N.E.2d 1074 (N.Y. 2007).

Petitioner filed a motion to vacate the judgment pursuant to N.Y.C.P.L. § 440.10 based on the trial court's improper denial of hearings to determine the admissibility of identification evidence at trial. (Pet. at 2.) On April 29, 2009, the County Court of Suffolk County denied the motion, concluding that his motion was procedurally barred because his record-based claims should have been raised in his direct appeal. (Opinion of Supreme Court, County of Suffolk, dated April 29, 2009.) The Appellate Division then denied petitioner's application on September 9, 2009. (Opinion of Supreme Court of New York, Appellate Division: Second Judicial Department, dated September 9, 2009.)

On December 30, 2008, petitioner filed a petition for a writ of error *coram nobis* in the Appellate Division, alleging that his appellate council provided ineffective representation. The Appellate Division denied Allan's petition on April 7, 2009, holding that the appellant failed to establish that he was denied the effective assistance of appellate counsel. *People v. Allan*, 875 N.Y.S.2d 901 (N.Y. App. Div. 2009). The Court of Appeals denied petitioner's application for leave to appeal on June 23, 2009. *People v. Allan*, 912 N.E.2d 1074 (N.Y. 2009).

## C. The Instant Petition

Petitioner filed the instant petition on November 26, 2008, but the petition was held in abeyance while petitioner exhausted his state court remedies. Petitioner filed an amended petition on April 22, 2010, within the one-year statute of limitations provided for in 28 U.S.C. § 2244(d). Respondent

filed his response on June 25, 2010. The Court has fully considered the submissions and arguments of the parties.

## II. STANDARD OF REVIEW

To determine whether petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented by the State court proceedings.

28 U.S.C. § 2554. "Clearly established Federal law" is compromised of "the holdings, as opposed to the dicta, of [Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at

a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principles from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.*

AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decisions applied clearly established federal law erroneously or incorrectly. Rather, that application must be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed feelings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

### III. DISCUSSION

Petitioner argues that he is entitled to habeas relief on five grounds: (1) the evidence was insufficient as a matter of law to support a finding of guilt beyond a reasonable doubt; (2) there was prosecutorial misconduct because: (a) various summation comments by the prosecutor deprived petitioner of a fair trial; (b) the prosecution introduced hearsay into evidence and elicited expert testimony from a lay witness; and (c) the prosecution failed to disclose potentially exculpatory material in a timely manner; (3) the defense counsel failed to provide effective representation by failing to (a) request an accomplice instruction; (b) request jury instructions on each element of the charged crime; (c) request a hearing regarding identification evidence; (d) object to the trial court's circumstantial evidence instruction; (e) object to the introduction of hearsay testimony; and (f) object to the prosecution's summation; (4) the trial court erred when it: (a) improperly instructed the jury regarding circumstantial evidence; (b) failed to instruct the jury that Donald Johnson was an accomplice; (c) shifted the burden of proof in its *Brady* ruling; (d) allowed the prosecution to introduce hearsay into evidence; and (e) permitted several in court identifications that lacked an independent basis; and (5) the trial court improperly denied petitioner a *Wade* or *Rodriguez* hearing.

### A. Procedural Bar

Respondent argues that petitioner's claims of prosecutorial misconduct, trial court errors, and improper denial of a *Wade* or *Rodriguez* hearing are procedurally barred from review. The Court agrees with the respondent.

### 1. Failure to Exhaust

As a threshold matter, a district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the state." 28 U.S.C. § 2254(b)(1)(A). Although a state prisoner need not petition for certiorari to

the United States Supreme Court to exhaust his claims, *see Lawrence v. Florida*, 549 U.S. 327, 333 (2007), petitioner must fairly present his federal constitutional claims to the highest state court having jurisdiction over them. *See Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 191 n.3 (2d Cir. 1982) (en banc). Exhaustion of state remedies requires that a petitioner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (quotation marks omitted) (alteration in original)).

However, "it is not sufficient merely that the federal habeas applicant has been through the state courts." *Picard*, 404 U.S. at 275-76. On the contrary, to provide the State with the necessary "opportunity," the prisoner must "fairly present" his claims in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Duncan*, 513 U.S. at 365-66. "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and legal premises of the claim he asserts in federal court.'" *Jones v. Keane*, 329 F.3d 290, 294-95 (2d Cir. 2003) (quoting *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997)). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegation were omitted, the state court has not had a fair opportunity to rule on the claim." *Daye*, 696 F.2d at 191-92 (citing *Picard*, 404 U.S.

at 276; *United States ex rel. Cleveland v. Casscles*, 479 F.2d 15, 19-20 (2d Cir. 1973)). To that end, "[t]he chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Id.* at 192 (footnote omitted).

## 2. State Procedural Requirements

Like the failure to exhaust a claim, the failure to satisfy the state's procedural requirements deprives the state courts of an opportunity to address the federal constitutional or statutory issues in a petitioner's claim. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). "[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997) (quoting *Coleman*, 501 U.S. at 735) (additional citations and emphasis omitted). Where the petitioner "can no longer obtain state-court review of his present claims on account of his procedural default, those claims are . . . to be deemed exhausted." *DiGuglielmo v. Smith*, 366 F.3d 130, 135 (2d Cir. 2004) (citing *Harris v. Reed*, 489 U.S. 255, 263 n. 9 (1989); *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991)). Therefore, for exhaustion purposes, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Keane*, 118 F.3d at 139 (quoting *Hoke*, 933 F.2d at 120).

However, "exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead if the petitioner

procedurally defaulted on those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (citing *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Coleman*, 501 U.S. at 744-51). "[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Netherland*, 518 U.S. at 162 (citations omitted).

The procedural bar rule in the review of applications for writs of habeas corpus is based on the comity and respect that state judgments must be accorded. *See House v. Bell*, 547 U.S. 518, 536 (2006). Petitioner's federal claims also may be procedurally barred from habeas corpus review if they were decided at the state level on adequate and independent grounds. *See Coleman*, 501 U.S. at 729-33. The purpose of this rule is to maintain the delicate balance of federalism by retaining a state's rights to enforce its laws and to maintain its judicial procedures as it sees fit. *Id.* at 730-31.

To be independent, the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case," *Harris v. Reed*, 489 U.S. 255, 261-62 (1989), by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar." *Id.* at 263 (internal quotation marks omitted). The procedural rule at issue is adequate if it is "firmly established and regularly followed by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir.1999) (internal quotation marks omitted). However, there is a "small category" of "exceptional cases in which [an] exorbitant application of a generally sound [procedural] rule renders the state

ground inadequate to stop consideration of a federal question." *Lee v. Kemna,* 534 U.S. 362, 376, 381 (2002). Nevertheless, "principles of comity . . . counsel that a federal court that deems a state procedural rule inadequate should not reach that conclusion lightly or without clear support in state law." *Garcia,* 188 F.3d at 77 (quotation marks omitted).

Once it is determined that a claim is procedurally barred under state rules, a federal court may still review such a claim on its merits if the petitioner can demonstrate both cause for the default and prejudice results therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Coleman*, 501 U.S. at 750. A miscarriage of justice is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

### 3. Application

The Court concludes that petitioner's claims of prosecutorial misconduct, the improper denial of a *Wade* or *Rodriguez* hearing, and trial court errors are procedurally barred from review.

#### a. Prosecutorial Misconduct Claims

##### i. Untimely Disclosure of *Brady* Material and Introduction of Hearsay Evidence and Expert Testimony from a Lay Witness

Petitioner argues that the prosecution's failure to disclose information regarding the removal of several of the victim's personal items prior to the commencement of petitioner's trial was a violation of the government's duty to disclose potentially exculpatory evidence, as established by

*Brady v. Maryland,* 373 U.S. 83 (1963).[8] Petitioner also argues that the prosecution engaged in prosecutorial misconduct by eliciting hearsay evidence and expert testimony from a lay witness. (Pet. at 8.)

Allan's petition indicates that the only grounds he raised on appeal to the Supreme Court, Appellate Division, Second Department, were the eight grounds delineated *supra*, Section I.B. Thus, petitioner's claims that the prosecution engaged in untimely disclosure of *Brady* material and introduced improper hearsay and lay opinion testimony were not properly raised on appeal, and therefore were not fairly presented to "[t]he state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan*, 513 U.S. at 365 (quoting *Picard*, 404 U.S. at 275). Accordingly, the claims were not properly exhausted and cannot be considered by this Court.

To overcome a procedural bar, petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. However, petitioner has failed to meet this burden. Petitioner has not provided any explanation for his failure to properly exhaust all of his claims in state court.

---

[8] Specifically, petitioner argues that both Kodie Lister and Dennis Jackson testified that they had removed certain items – crack cocaine, a scale, and a beeper – from victim's body after his death and that they both revealed this information prior to trial. (Pet. at 8.) Petitioner further claims that the prosecution denied having any knowledge of this evidence and, as a result, this establishes that petitioner's habeas petition should be granted. (Pet. at 8.)

Thus, because petitioner has not provided a satisfactory explanation for his failure to properly exhaust these claims in state court, and because petitioner has demonstrated neither prejudice resulting from the default nor a miscarriage of justice, these claims are procedurally barred from review by this Court. In any event, assuming *arguendo* that these claims are reviewable, they are without merit, as a set forth *infra*.

ii. Improper Summation Claim

Petitioner claims that the prosecutor's comments made during summation were improper and denied him a fair trial. Petitioner's improper summation claim is procedurally barred from habeas corpus review since it was decided at the state level on adequate and independent procedural grounds.

As discussed *supra*, petitioner appealed his conviction to the Appellate Division on eight grounds, one of which was improper summation comments by the prosecution. However, in the Appellate Division's decision affirming the judgment of petitioner's conviction, the Appellate Division declined to review petitioner's improper summation claim, stating that it was unpreserved for appellate review under N.Y.C.P.L. § 470.05(2). *People v. Allan*, 41 A.D.3d 727, 772-73 (N.Y. App. Div. 2007). The appellate court's statement that petitioner's claim was "unpreserved" is sufficient to establish that it was relying on a procedural bar as an independent ground in disposing of the issue. *See, e.g., Figueroa v. Grenier*, No. 02-cv-5444 DAB GWG, 2005 WL 249001, at *8 (S.D.N.Y. Feb. 2, 2005).

New York's preservation doctrine is firmly established and regularly followed. *See Garvey v. Duncan*, 485 F.3d 709, 715-16 (2d Cir. 2007); *Glenn v. Bartlett*, 98 F.3d

721, 724–25 (2d Cir. 1996) (finding that failure to preserve issue for appeal was adequate and independent state law ground precluding federal habeas review and further noting that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate ground, even where the state court has also ruled in the alternative on the merits of the federal claim" (quoting *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990))); *see also Fernandez v. Leonardo*, 931 F.2d 214, 215-16 (2d Cir. 1991).

Furthermore, the Appellate Division's reliance on the preservation doctrine was not exorbitant in this case. As noted above, in *Lee v. Kemna*, the Supreme Court concluded that there is a limited category of "exceptional cases" in which the state appellate court applied a firmly established and regularly followed procedural ground in an "exorbitant" manner so that the application of the ground was inadequate, and a federal court was therefore not barred from reviewing that claim on the merits in a habeas appeal. 534 U.S. at 376. Although the Supreme Court did not set forth a test that must be followed to determine whether an application of a procedural ground was exorbitant, the Second Circuit concluded in *Cotto v. Herbert* that there were three factors that could be derived from *Lee* and should be considered as guideposts in the analysis. 331 F.3d 217, 240 (2d Cir. 2003). These factors include: "(1) whether the alleged violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state case law indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had substantially complied with the rule given 'the realities of trial,' and, therefore, whether demanding perfect compliance with

the rule would serve a legitimate government interest." *Id.* Similarly, the *Cotto* factors are used to determine if the state ground relied on was adequate to preclude habeas review.

In accordance with the *Cotto* factors, the Appellate Division in the instant case did not apply the preservation doctrine in an exorbitant manner. The Appellate Division implicitly relied on the preservation doctrine set forth in N.Y.C.P.L. § 470.05(2). *People v. Allan*, 41 A.D.3d at 728. Essentially, this statute "grants an appellate court the discretion to decline to review claims if they were not preserved by being sufficiently presented to or decided by the trial court." *Ashley v. Burge*, No. 05 Civ. 4497(JGK), 2006 WL 3327589, at *4 (E.D.N.Y. Nov. 3, 2006); *see also People v. Medina*, 53 N.Y.2d 951, 952, 441 N.Y.S. 442 (N.Y.1981). In the instant case, the Appellate Division did not explicitly state why it believed that petitioner's claim was unpreserved.

With respect to the first *Cotto* factor, it is hard to apply to this claim because it involves a failure to raise an objection. However, assuming *arguendo* that this factor favors petitioner's argument, the second and third *Cotto* factors weigh heavily in favor of upholding the Appellate Division's conclusion.

The second *Cotto* factor weighs heavily against petitioner. New York courts have consistently held that a defendant must state his objections to summation comments at trial in order to give the trial court a chance to correct the alleged errors. *Roldan v. Ercole*, No. 08 CV 6548(LBS), 2009 WL 2191176, at *5 (S.D.N.Y. July 20, 2009) (citing *People v. Reilly*, 47 N.Y.2d 860, 419 N.Y.S.2d 63, 392 N.E.2d 1246 (1979); *People v. Ruiz*, 8 A.D.3d 831, 778 N.Y.S.2d 559 (N.Y. App. Div. 2004) (failure to object

to prosecutor's summation remarks rendered claim unpreserved for appellate review). During the trial, petitioner did not object to the prosecutor's summation comments regarding (1) the lighting in the basement, (2) the credibility of its witnesses, (3) the importance of two witnesses, or (4) defense counsel's trial strategy as characterizing the prosecution's case as a conspiracy. Therefore, petitioner did not comply with the state law rule.

Finally, with respect to the third *Cotto* factor, the petitioner failed to "substantially comply" with the preservation rule and demanding full compliance would serve a legitimate government interest. Petitioner failed to alert the trial court to his objections to the prosecution's statements. Essentially, the trial judge was unable to assess whether a curative instruction was needed regarding the summation statements. Full compliance with the preservation rule is critical so that the trial judge has an opportunity to prevent any reversible error, and because New York "has an interest in the finality of criminal trials." *See Ashley*, 2006 WL 3327589 at *5-7. As a result, the Appellate Division's conclusion that petitioner's claim of improper prosecutorial summation comments was procedurally barred was not exorbitant. Thus, the Appellate Division's holding that petitioner's claim was unpreserved for appellate review represents an adequate and independent state law ground to deny habeas relief.

Notwithstanding petitioner's failure to preserve his claim, this Court may still consider it on the merits if petitioner can demonstrate either "cause and prejudice" for the procedural default or that failure to consider the claim will result in a miscarriage of justice, *i.e.*, that he is actually innocent of the crimes for which he was convicted. *See Coleman*, 501 U.S. at 748-51; *Murray*, 477 U.S. at 496. Petitioner has

failed to demonstrate cause or prejudice. Petitioner makes no argument for why he did not object during the prosecution's summation. To the extent petitioner is suggesting that the procedural default was a result of ineffective assistance of counsel, "[w]here, as here, a petitioner cannot prevail on the merits of his claim[], he cannot overcome a procedural bar by claiming ineffective assistance of counsel." *McLeod v. Graham*, No. 10 Civ. 3778(BMC), 2010 WL 5125317, at *4 (Dec. 9, 2010) (citing *Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001) and *Larrea v. Bennett*, 368 F.3d 179, 182 (2d Cir. 2004)).

Nor has petitioner demonstrated prejudice or that a miscarriage of justice would occur if the Court failed to review his claim on the merits. The introduction of such statements did not result in prejudice to the petitioner, *i.e.*, the introduction of such statements did not have a reasonable probability of affecting the outcome of the trial. As described in more detail, *infra* Section III.B.1.a.iv., the summation statements would not have caused the jury to find proof beyond a reasonable doubt. There was overwhelming evidence that the petitioner killed Javon Riddick. Finally, no miscarriage of justice would result from barring the petitioner's claim on procedural grounds.

b. Improper Denial of *Wade* or *Rodriguez* Hearing

Petitioner argues that a *Wade* or *Rodriguez* hearing should have been held, and that certain events surrounding the denial of the hearing denied him his right to due process. As with petitioner's prosecutorial misconduct claims, petitioner failed to exhaust his claim of an improper denial of a *Wade* or *Rodriguez* hearing in state court. Particularly, petitioner appealed his conviction to the Appellate Division on

eight grounds, delineated *supra*, Section I.B, none of which mentioned the *Wade* or *Rodriguez* hearing claim. Because this claim was not properly raised on appeal, it was not fairly presented to "[t]he state courts in order to give the State the opportunity to pass upon and correct the alleged violations of its prisoners' federal rights." *Duncan*, 513 U.S. at 365 (quoting *Picard*, 404 U.S. at 275). Accordingly, the claim was not properly exhausted and cannot be considered by this Court.

Furthermore, petitioner's N.Y.C.P.L. § 440.10 motion, which alleged that the trial court improperly denied hearings to determine the admissibility of the identification evidence at trial, was denied because the issue could have been, but was not, raised on direct appeal. (Opinion of Supreme Court, County of Suffolk, dated April 29, 2009.) A district court considering a habeas petition may not review a claim if the last state court to consider the claim "clearly and expressly rel[ied] on an independent and adequate state ground" to deny relief, such as a procedural bar. *Coleman*, 501 US at 735. The Second Circuit has made clear that a denial of a § 440.10 motion for failure to raise a claim on direct appeal constitutes an "independent and adequate" state procedural ground which, accordingly, bars federal habeas review of a petitioner's claims. *See Sweet v. Bennett*, 353 F.3d 135, 140 (2d Cir. 2003) (finding a claim waived under § 440.10(2)(c) to be "procedurally defaulted for the purposes of habeas review as well"); *Aparicio v. Artuz*, 269 F.3d 78, 93 (2d Cir. 2001) ("[T]here can be no doubt that the state court's decision on Petitioner's trial counsel claim rested on an adequate and independent state bar: [petitioner] never raised ineffective assistance of trial counsel in his direct appeal. . . . New York law prohibits review of a claim on collateral review when the defendant unjustifiably

fails to raise the claim on direct appeal."); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995) (federal habeas review unavailable where state court found claim to be procedurally barred under § 440.10(2)(c)).

Therefore, the Court can review these claims only if petitioner shows cause for the default and prejudice resulting therefrom, or shows that a miscarriage of justice would result if the Court did not review the claims. Petitioner has not met the high burden, discussed *supra*, that is needed to demonstrate either prejudice or a miscarriage of justice. Accordingly, petitioner's claims regarding improper denials of a *Wade* or *Rodriguez* hearing are procedurally barred from review.

### c. Claim Alleging Trial Court Errors

#### i. Jury Instructions: Improper Circumstantial Evidence Instruction and Failure to Give Accomplice Instruction

Petitioner argues that the trial court erred when, in its final charge, it failed to provide a proper circumstantial evidence charge and when it failed to instruct the jury that Donald Johnson was an accomplice as a matter of law. Petitioner's claim of trial court error related to jury instructions is procedurally barred from habeas corpus review since it was decided at the state level on adequate and independent procedural grounds.

In deciding to affirm the judgment of Petitioner's conviction, the Appellate Division declined to review petitioner's jury instruction claim, stating that it was unpreserved for appellate review under N.Y.C.P.L. § 470.05(2). *People v. Allan*, 41 A.D.2d 727, 728 (N.Y. App. Div. 2007). The procedural bar constitutes an "independent" state ground for the reasons

discussed *supra*, Section III.A.3.a.ii. Also as noted above, this Court must consider the *Cotto* guideposts in its analysis to determine if this constitutes an adequate state ground for procedurally baring the claim.

The first *Cotto* factor is less relevant in this case because it is unclear whether alternative or additional jury instructions would have altered trial court's conclusion. *See Devison v. Cunningham*, No. 09 Civ. 1031(DAB)(JLC), 2010 WL 5060789, at *18 (S.D.N.Y. Oct. 15, 2010) ("As an initial matter, it is not helpful to ask whether the trial court actually relied on the violation, since the violation in question was a failure to raise an issue at trial."). However, assuming *arguendo* that this factor favors petitioner's argument, the second and third *Cotto* factors weigh in favor of upholding the Appellate Division's conclusion.

The second *Cotto* factor weighs heavily against Petitioner. New York case law "indicates that parties must raise issues regarding jury instructions at the time of trial in order for them to be considered on appeal." *Id.* at *19 (citing *People v. Rivera*, 72 A.D.3d 576, 577 (N.Y. App. Div. 2010) and *People v. Green*, 49 A.D.3d 1029, 1030 (N.Y. App. Div. 2008). Since Petitioner did not state his objections to the trial court, the second *Cotto* factor weighs against petitioner. With respect to the third *Cotto* factor, there is nothing to suggest that petitioner substantially complied with the requirement that he raise his objections to the jury instructions to the trial court, and, as stated *supra*, New York has a legitimate government interest in the prevention of reversible errors and the finality of criminal trials. Thus, the procedural bar is an independent and adequate ground for precluding federal habeas relief.

Therefore, the Court can review this claim only if petitioner shows cause for the default and prejudice resulting therefrom, or shows that a miscarriage of justice would result if the Court did not review the claims. Petitioner has not met the high burden, discussed *supra*, that is needed to demonstrate either prejudice or a miscarriage of justice. Accordingly, petitioner's claims regarding trial court error due to improper or failure to give certain jury instructions are procedurally barred from review. In any event, even if these claims were not procedurally barred, they fail on the merits for the reasons discussed *infra*.

### ii. Shift in Burden of Proof in *Brady* Ruling, Introduction of Hearsay, and In-Court Identifications

Petitioner argues that the trial court erred when it shifted the burden of proof in its *Brady* ruling, allowed the prosecution to introduce hearsay into evidence, and permitted several in court identifications that lacked an independent basis.

However, petitioner failed to exhaust these claims in state court. Particularly, petitioner appealed his conviction to the Appellate Division on eight grounds, delineated *supra*, Section I.B, none of which involved the *Brady* ruling, the introduction of hearsay, or in-court identifications. Thus, these claims were not properly raised on appeal, and therefore were not fairly presented to "[t]he state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan*, 513 U.S. at 365 (quoting *Picard*, 404 U.S. at 275). Accordingly, the claims were not properly exhausted and cannot be considered by this Court.

To overcome a procedural bar, petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged

violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. However, petitioner has failed to meet this burden. Petitioner has not provided any explanation for his failure to properly exhaust all of his claims in state court.

Thus, because petitioner has not provided a satisfactory explanation for his failure to properly exhaust these claims in state court, and because petitioner has demonstrated neither prejudice resulting from the default nor a miscarriage of justice, these claims are procedurally barred from review by this Court. In any event, assuming *arguendo* that these claims are reviewable, they are without merit, as a set forth *infra*.

### B. The Merits

#### 1. Procedurally Barred Claims

Although petitioner's claims of prosecutorial misconduct, improper denial of a *Wade* or *Rodriguez* hearing, and trial court errors are procedurally barred, the Court finds that, assuming *arguendo* that petitioner's claims were properly before this Court, the claims are without merit.

##### a. Prosecutorial Misconduct

###### i. Untimely Disclosure of *Brady* Material

Petitioner argues that the prosecution's failure to disclose information regarding the removal of several of the victim's personal items prior to the commencement of petitioner's trial was a violation of the government's duty to disclose potentially exculpatory evidence, as established by *Brady v. Maryland*, 373 U.S. 83 (1963). Specifically, petitioner argues that both Kodie Lister and Dennis Jackson testified

that they had removed certain items – crack cocaine, a scale, and a beeper – from victim's body after his death and that they both revealed this information prior to trial. (Pet. at 8.) Petitioner further claims that the prosecution denied having any knowledge of this evidence and as a result establishes that petitioner's habeas petition should be granted. (Pet. at 8.) Because this evidence was neither suppressed nor material, petitioner's *Brady* claim is without merit.

Under *Brady*, the "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. In order to prevail on a *Brady* claim, petitioner must demonstrate that material evidence favorable to his case was not disclosed to him. *See Kyles v. Whitley*, 514 U.S. 419, 38 (1995) ("[T]he prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable."). "Such evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Strickler v. Greene*, 527 U.S. 263, 280, 119 S.Ct. 1936 (1999) (quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375 (1985)). Failure to disclose such material evidence merits relief only if the prosecution's failure "'undermines confidence in the outcome of the trial.'" *Kyles*, 514 U.S. at 434 (quoting *Bagley,* 473 U.S. at 678). Furthermore, "[t]here is never a real '*Brady*' violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler*, 527 U.S. at 281.

As the Second Circuit has explained, "[w]ith respect to *when* the prosecution must

make a disclosure required by *Brady*, the law also appears to be settled. *Brady* material must be disclosed in time for its effective use at trial." *United States v. Coppa*, 267 F.3d 132, 135 (2d Cir. 2001) (emphasis in original). Thus, "*Brady* material that is not 'disclos[ed] in sufficient time to afford the defense an opportunity for use' may be deemed suppressed within the meaning of the *Brady* doctrine." *United States v. Douglas*, 525 F.3d 225, 245 (2d Cir. 2008) (quoting *Leka v. Portuondo*, 257 F.3d 89, 103 (2d Cir. 2001)). On the other hand, if the defense receives the information from the government in time for its effective use at trial by the defense, then the information has not been "suppressed" within the meaning of *Brady* regardless of whether the disclosure was made immediately before trial or even during the trial. *See id.* at 245-46 (finding government's disclosure of documents one business day before trial did not constitute "suppression" within the meaning of *Brady* because defense counsel had sufficient time to make effective use of documents).

With respect to the issue of "effective use," the Second Circuit has emphasized that there are situations where the receipt of exculpatory information immediately prior to trial, or during the trial, will not provide the defense with sufficient time to fully and effectively develop and use the information. For example, in *Leka v. Portuondo*, the Second Circuit explained:

> The limited *Brady* material disclosed to [the defendant] could have led to specific exculpatory information only if the defense undertook further investigation. When such a disclosure is first made on the eve of trial, or when trial is under way, the opportunity to use it may be impaired. The defense may be unable to divert resources from other initiatives and obligations that are or may seem more pressing. And the defense may be unable to assimilate the information into its case. *See United States v. Cobb*, 271 F. Supp. 159, 163 (S.D.N.Y. 1967) (Mansfield, J.) ("There may be instances where disclosure of exculpatory evidence for the first time during trial would be too late to enable the defendant to use it effectively in his own defense, particularly if it were to open the door to witnesses or documents requiring time to be marshalled and presented.").

257 F.3d at 101; *accord Watson v. Greene*, No. 06 CV 2212(CBA), 2009 WL 5172874, at *31 (E.D.N.Y. Dec. 30, 2009) ("Although pretrial disclosure is not mandated in all circumstances . . ., favorable evidence that has a material bearing on defense preparation must be disclosed prior to trial if further development by defense counsel would be necessary in order to put it to effective use." (internal quotation marks and citations omitted)), *rev'd on other grounds*, 640 F.3d 501 (2d Cir. 2011). Thus, the late disclosure of exculpatory evidence is fraught with great danger of prejudice to the defendant, and a court must carefully scrutinize any such situation to ensure that, despite the fact that information was disclosed on the eve of trial or during the trial, the defense was able to effectively use the information.

Petitioner has failed to establish either suppression or materiality. First, the evidence at issue – Kodie Lister and Dennis

Jackson's removal of several of victim's possessions following his death – was not "suppressed" for purposes of *Brady*. Instead, the petitioner was able to make effective use of such evidence at trial. Petitioner was able to elicit, on cross-examination of Lister and Jackson, the details of the items they removed from the victim. The disclosure came before the government had rested, meaning that the petitioner would have had the opportunity to call and subpoena any additional witnesses he so desired. No further development, other than that already afforded to the defense, was necessary to allow the petitioner to make effective use of evidence at trial. *See e.g. Singh v. Greene*, No. 10-CV-4444(JFB), 2011 WL 2009309, at *23 (E.D.N.Y. May 20, 2011).

Nevertheless, petitioner argues that earlier disclosure of this evidence would have allowed pretrial investigation of Lister, Jackson and other potential witnesses to help counter the prosecution's claim that petitioner shot the victim because he did not voluntarily surrender his property. (Pet. at 7-8). However, neither *Brady*, nor any other decision the Court is aware of, requires defense counsel priority access to witnesses. Moreover, there is no evidence that earlier access would have resulted in more favorable evidence for petitioner. At the least, petitioner did have the opportunity to ask for adjournment to so allow him to investigate, an option he failed to exercise.

Even assuming *arguendo* that the evidence regarding the post-death removal of items from the victim's body was suppressed, the Court cannot conclude that there was a reasonable probability that such evidence would have changed the result at trial. Petitioner argues that disclosure of such evidence would have undercut the prosecution's theory that petitioner shot the victim because he did not voluntarily surrender his property. (Pet. at 7-8.) However, the Court finds that even if the jury believed that Kodie Lister and Dennis Jackson removed the items, it does not counter the abundance of uncontested, additional evidence supporting the jury's verdict at trial. This evidence includes: (1) the testimony of six witnesses who were at 28 Cypress Avenue at the time of the shooting and heard the loud noises; (2) Giselle Douglas' observations of petitioner with a gun in his hand, patting down and standing over the victim's body; (3) Shaneka Jackson's observations of petitioner standing over victim's body, transferring money from the victim's pocket into his own pocket, and stating "Mother f****r, I finally got you"; (4) Donald Johnson's testimony of his meeting with petitioner after the shooting, which includes the sale of the gun and petitioner's comment that he "had to clap that n****r . . . [because] . . . he wasn't going to give it to me"; and (5) Dennis Jackson and Donald Johnson's testimony that petitioner considered forcibly taking money from Riddick. Consequently, there is no reasonable probability that earlier disclosure of the post-death removal of the victim's goods would have led the jury to arrive at a different verdict.

ii. Introduction of Hearsay and Introduction of Expert Testimony From a Lay Witness

(1) Legal Standard

It is well-settled that "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus." *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983); *see generally Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[H]abeas corpus relief does not lie for errors of state law." (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.E.2d 606 (1990)). Instead, for a habeas petitioner

to prevail in connection with a claim regarding an evidentiary error, the petitioner must "show that the error deprived [him] of a fundamentally fair trial." *Taylor*, 708 F.2d at 891; *see also Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) ("Even erroneous evidentiary rulings warrant a writ of habeas corpus only where the petitioner 'can show that the error deprived [him] of a fundamentally fair trial.'" (quoting *Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988) (internal quotation marks omitted))). In other words, "[t]he introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (quoting *Dowling v. United States*, 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990) (internal quotation marks omitted)).

To constitute a denial of due process under this standard, the erroneously admitted evidence must have been "'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" *Dunnigan*, 137 F.3d at 125 (quoting *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992) (internal quotation marks omitted)); *see also Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985) (holding that evidence must be "crucial, critical, highly significant") (citation and internal quotation marks omitted). Moreover, the court "must review the erroneously admitted evidence in light of the entire record before the jury." *Dunnigan*, 137 F.3d at 125 (citation and internal quotation marks omitted). In making this due process determination, the Court should engage in a two-part analysis, examining (1) whether the trial court's evidentiary ruling was erroneous under New York State law, and (2) whether the error

amounted to the denial of the constitutional right to a fundamentally fair trial. *See Wade v. Mantello,* 333 F.3d 51, 59 n.7 (2d Cir. 2003); *Davis v. Strack,* 270 F.3d 111, 123-24 (2d Cir. 2001). As set forth below, the Court has reviewed petitioner's objections regarding hearsay under this two-part test and concludes that it does not warrant habeas relief.

(2) Application

(a) Alleged Hearsay Testimony

Petitioner seeks habeas relief on the basis of the trial court's admission of certain hearsay testimony. In particular, he argues that the prosecution improperly introduced Shaneka Jackson's out-of-court statement that petitioner "killed Javon" (Tr. at 1302), into evidence, even though Jackson testified that she did not actually see who shot the victim. (Pet. at 8.) Petitioner further notes that the introduction of hearsay was heightened when the prosecution adduced testimony from Joe Pita, Dennis Jackson, and Gilbert Henderson that supported Shaneka Jackson's statement. (*Id.* at 8.)

At trial, Shaneka Jackson testified about the events that occurred at 28 Cypress Avenue leading up to and immediately after Javon Riddick was shot. (Tr. at 1274-1309.) Part of her description of these events was a conversation with her brother Dennis immediately after she saw petitioner standing over the victim's body. (Tr. at 1302.) In her testimony, Shaneka stated that she told her brother, "Box did it." (*Id.*)

As a threshold matter, there is no indication that the admission of this statement was erroneous under state law. In fact, no objection was made.[9] (*Id.*) If an

---

[9] Although Petitioner does not raise a Confrontation Clause claim, such a claim would be meritless where the statement was properly admitted and the witness

objection had been made, Shaneka Jackson's statement, made immediately after seeing petitioner standing over Riddick's body as she was screaming, falls under the "excited utterance" exception to the hearsay rule. *See People v. Brown*, 517 N.E.2d 515, 518-20, 70 N.Y.2d 513 (1987) (statements admissible where made "under the stress of excitement caused by an external event" and not "under the impetus of studied reflection" (quoting *People v. Edwards*, 392 N.E.2d 1229, 1231, 47 N.Y.2d 493 (1979)). Shaneka Jackson had just heard gunshots, witnessed petitioner standing over Riddick's dead body, been pushed over by petitioner as he fled the basement, and began screaming. (Tr. 1298-1302.) Her statement was made under the stress of witnessing the aftermath of Riddick's death and petitioner's pushing her to the ground. The statement was made quickly after these events and was not the product of studied reflection.

Furthermore, even if the prosecution's introduction of the statements was improper, in light of the overwhelming evidence of petitioner's guilt, namely the combined effect of the testimony of twenty-five witnesses, petitioner was not substantially harmed by the statements and thus was not denied his constitutional right to a fundamentally fair trial. Any error was harmless and consequently habeas relief is not warranted on this ground.

### (b) Alleged Introduction of Expert Testimony from a Lay Witness

Petitioner argues that the prosecution elicited expert testimony from a lay witness, particularly from Donald Johnson. (Pet. at 8.) Specifically, petitioner argues that prosecutorial misconduct occurred when the prosecution questioned Johnson as to why

the gun that petitioner sold to him could not be recovered from the pond that Johnson tossed it into. (*Id*. at 8; Tr. at 1602-04, 1606, 1656.) This Court disagrees.

As a general principle of evidence, lay witnesses must testify only to the facts and not to their opinions and conclusions drawn from the facts. *People v. Hackett*, 228 A.D.2d 377, 378 (N.Y. App. Div. 1996). It is left to the jury to draw the appropriate inferences arising from the facts. *Id.* However, "for at least the last century, lay persons have been permitted to give opinion evidence only when the subject matter of the testimony was such that it would be impossible to accurately describe the facts without stating an opinion or impression." *Kravitz v. Long Is. Jewish-Hillside Med. Center*, 497 N.Y.S.2d 51, 55, 113 A.D.2d 577 (N.Y. App. Div. 1985).

In this case, Donald Johnson testified that shortly after he left the McDonald's parking lot, he returned to Cypress Avenue which was blocked off with police tape. (Tr. 1601.) Donald Johnson encountered Dennis Jackson, who informed him of the events of the evening. (*Id.* at 1602.) Donald Johnson testified that, after this conversation, he traveled to East Avenue, where he threw the gun in a pond at a sand pit. (*Id.* at 1602.) Donald Johnson further testified that when he returned to the pond thirteen months later, "the pond was covered more with dirt" and was "half the size" it had been when he threw the gun in it thirteen months prior. (*Id.* at 1656.) These statements were statements of fact drawn from Donald Johnson's firsthand observation of the scene where he disposed of the gun. Donald Johnson did not state an opinion or conclusion drawn from these facts and was never asked his opinion as to why the gun was not found. Defense counsel did not object to Johnson's testimony.

_____

testified and was available for cross-examination on this statement.

Even if the prosecution's introduction of the statements was improper, in light of the overwhelming evidence of petitioner's guilt, namely the combined effect of the testimony twenty-five witnesses, petitioner has failed to satisfy the high burden needed to prove a due process violation.

### iv. Improper Summation

Petitioner claims that the prosecutor's comments made during summation were improper and denied him a fair trial. This Court disagrees. As set forth below, none of the prosecutor's comments during the summation, either in isolation or cumulatively, warrant habeas relief.

### (1) Legal Standard

"A criminal conviction 'is not to be lightly overturned on the basis of a prosecutor's comments standing along' in an otherwise fair proceeding." *Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991) (quoting *United States v. Young*, 470 U.S. 1, 11 (1985)). "Remarks of the prosecutor in summation do not amount to a denial of due process unless they constitute 'egregious misconduct.'" *United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974)). For a claim of prosecutorial misconduct to establish a claim of constitutional error, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks and citation omitted). "There must, instead, be a showing that '[petitioner] suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict.'" *Alexander v. Phillips*, 02 Civ. 8735(SAS)(FM), 2006 U.S. Dist. LEXIS

8926, *40-41 (S.D.N.Y. Feb. 21, 2006) (quoting *Bentley v. Scully*, 41 F .3d 818, 824 (2d Cir. 1994)); *see also Dawkins v. Artuz*, 152 F. App'x 45, 46-47 (2d Cir. 2005) ("To warrant granting the writ, the prosecutorial misconduct must have 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" (quoting *Darden*, 477 U.S. at 181)). "[N]ot every trial error or infirmity which might call for the application of supervisory powers correspondingly constitutes a 'failure to observe that fundamental fairness essential to the very concept of justice.'" *Donnelly*, 416 U.S. at 642 (quoting *Lisenba v. California*, 314 U.S. 219, 236 (1941)). The Court must then review such comments by a prosecutor narrowly to determine whether they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 642).

To overcome this burden, petitioner must show that he "'suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict.'" *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994). Factors considered in determining such prejudice include "(1) the severity of the prosecutor's conduct; (2) what steps, if any, the trial court may have taken to remedy any prejudice; and (3) whether the conviction was certain absent the prejudicial conduct." *Id. Accord United States v. Thomas*, 377 F.3d 232, 245 (2d Cir. 2004). "In addition, in determining whether a prosecutor's conduct was unconstitutional, a court 'must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's [remarks] . . . . If the prosecutor's remarks were 'invited' and did no more than respond substantially in order to 'right the scale,' such comments

would not warrant reversing a conviction.'" *Everett v. Fischer*, No. 00 Civ. 6300(NG), 2002 WL 1447487, at *2 (E.D.N.Y. July 3, 2002) (quoting *Young*, 470 U.S. at 13-14) (alterations in original).

### (2) Application

Here, petitioner argues that comments made by the prosecutor during summation were improper and deprived him of a fair trial. For instance, petitioner specifically points out that, during summation, the prosecution argued that the lighting in the basement was sufficient to identify petitioner, even though the evidence presented suggested otherwise. (Pet. at 8.) Additionally, petitioner notes that the prosecution referred the defense counsel's trial strategy as characterizing the government's case as a conspiracy, even though the defense counsel never once mentioned a conspiracy. (*Id.*) Furthermore, petitioner argues that the prosecution's summation comments were improper because the prosecution excessively vouched for the credibility of its witnesses and emphasized the importance of two witnesses. (Pet. at 9.) Petitioner also argues that the prosecutor improperly commented on the failure of defense counsel to ask certain questions. (*Id.*) This Court, however, disagrees.[10]

As the Second Circuit has noted, "a prosecutor is not precluded from vigorous advocacy, or the use of colorful adjectives in summation." *United States v. Jaswal*, 47 F.3d 539, 544 (2d Cir. 1995); (quoting *United States v. Rivera*, 971 F.2d 876, 884 (2d. Cir. 1992)). Furthermore, "[a] prosecuting attorney is not an automaton whose role on summation is limited to parroting facts already before the jury. He is an advocate who is expected to prosecute diligently and vigorously, albeit without appeal to prejudice or passion." *See United States v. Wilner*, 523 F.2d 68, 74 (2d Cir. 1975).

Here, petitioner has not met the standard outlined by the Second Circuit in *Bentley*. First, this Court concludes that the prosecution's statements were not improper and, even assuming *arguendo* they were improper, were not egregious. *See, e.g.*, *Martin v. Brown*, No. 08-CV-0316 (JFB), 2010 WL 1740432 at *15 (E.D.N.Y. Apr. 29, 2010) ("In any event, even assuming *arguendo* that these or other comments by the prosecutor were improper, they were not severe or egregious and certainly did not render the trial so unfair as to deprive petitioner of his due process rights. Within the lengthy summation that involved an analysis of the trial evidence, the challenged comments did not play a substantial role in the summation, much less the entirety of the trial. . . . Moreover, given the overwhelming evidence of guilt, as discussed *supra*, even if the comments were improper, they clearly did not have a substantial or injurious effect

---

[10] Petitioner also challenges the prosecution's characterization of certain evidence in the record, specifically the prosecutor's references to a three-inch distance between Allan and Riddick when Allan shot Riddick in the head and generalized statements on the drug trade. (Pet. at 9.) Petitioner's contentions are without merit. The prosecutor's statements were based on reasonable inferences that could be drawn from the record and the application of common sense. Similarly, to the extent petitioner challenges the prosecutor's statements about certain questioning or lack thereof by defense counsel on cross-examination, the Court finds no error. For example, in one instance, the prosecutor was only

responding to defense counsel's explanation as to why he failed to cross-examine one witness, and in other instances, the prosecutor was commenting on how defense counsel's cross-examination focused on immaterial issues or on an issue that was not really in dispute. In any event, any errors in these statements are harmless in light of the overwhelming evidence of petitioner's guilt, and thus are insufficient to warrant habeas relief.

or influence on the jury's verdict." (collecting cases)). The prosecutor's comments that the defense was trying to convince the jury that the case was "a big old conspiracy," (Tr. at 1812), that the lighting in the basement "was perfect down there," (Tr. 1821), and that the jury can disregard certain witnesses' testimonies "because there are only two witnesses that really matter in this case, Giselle [Douglas] and Shaneka [Jackson]" (Tr. at 1829), were within the bounds of reasonable argument during a summation. *See United States v. Tocco*, 135 F.3d 116, 130 (2d Cir. 1998) ("The prosecution and the defense are generally entitled to wide latitude during closing arguments, so long as they do not misstate the evidence."); *United States v. Jaswal*, 47 F.3d 539, 544 (2d Cir.1995) (finding no prosecutorial misconduct where prosecutor characterized defendant's case as a "fairy tale" because "[a] prosecutor is not precluded from vigorous advocacy, or the use of colorful adjectives, in summation" (internal citations and quotation marks omitted)).

Furthermore, a good portion of the defense summations, sixteen of the thirty-seven pages, was aimed at questioning the credibility of several of the government's witnesses – Donald Johnson, Kodie Lister, Joseph Pita, Shaneka Jackson and Dennis Jackson. (Tr. at 1764-80.) The defense argued that these individuals were untrustworthy and that some or all of them were acting as coconspirators. (*Id*. at 1768, 1774, 1777.) Therefore, the parts of the prosecutor's summation where she advocated for the credibility of her witnesses constituted a fair response to the defense counsel's summation and did not constitute improper vouching for the prosecutor's witnesses.

The prosecutor's additional comments regarding the lighting in the basement and the defense counsel's strategy of labeling the government's case as a conspiracy were either fair comments or fair inferences to be drawn from the trial evidence and the defense counsel's summation. Moreover, these comments amounted to merely four pages out of a forty-five page summation over the course of a fourteen-day trial. Further, during the prosecutor's summation the defense only made two objections, both of which were overruled and neither of which was regarding the basement lighting or conspiracy comments.

The trial court minimized any prejudice to petitioner in its instructions to the jury. After the summations, the court instructed the jury:

> During the course of their summations, the District Attorney and defense counsel have commented on the evidence and have suggested to you certain inferences and conclusions which you might reasonably and logically draw from the evidence. The summations of counsel, of course, are not evidence. However, if the arguments of counsel strike you as reasonable and logical and are supported by the evidence, you may, if you so conclude, adopt them. On the other hand, if you find such argument to be unreasonable or illogical or unsupported by the evidence, you may reject them.
>
> In the last analysis, it is the function of the jury to draw their own inferences and conclusions from the evidence as they recall the

evidence to be and what evidence you find credible and believable.

(Tr. at 1843.) The Court also instructed the jury, "The defendant is not required to prove that he is or she is not guilty. In fact, the defendant is not required to prove or disprove anything." (*Id.* at 1865-66.)

Finally, under the third prong of the analysis, petitioner failed to show that his conviction was uncertain absent the challenged prosecutorial conduct. As the Second Circuit has noted, "[o]ften, the existence of substantial prejudice turns upon the strength of the government's case: if proof is strong, then the prejudicial effect of the comments tends to be deemed insubstantial; if proof of guilt is weak, then improper statements are more likely to result in reversal." *United States v. Modica*, 663 F.2d 1173, 1181 (2d Cir. 1981); *see also Bentley*, 41 F.3d at 824-25 (holding that review of a habeas corpus challenge based upon prosecutorial misconduct includes consideration of "whether the conviction was certain absence the prejudicial conduct[,]" finding harmless error and a failure to demonstrate a substantial or injurious effect where there was "compelling evidence in the prosecution's case . . . [and] the prosecutor's summation comments were both brief and isolated."); *Bradley v. Meachum*, 918 F.2d 338, 343 (2d Cir. 1990) ("The clear evidence of guilt demonstrates that [petitioner] was not prejudiced by the prosecutor's improper remarks."). In the instant case, overwhelming evidence was presented at trial for a jury to conclude beyond a reasonable doubt that petitioner was guilty of intentionally killing Riddick.

In sum, in light of all of the factors – including the overwhelming evidence of guilt at trial, the nature of the comments, and

the court's instructions to the jury – this Court finds that the prosecutor's summation statements did not cause the petitioner to suffer any actual prejudice that would have had an injurious effect or influence on the jury's verdict. There is no basis for habeas relief on this prosecutorial misconduct claim.

### b. Improper Denial of *Wade* or *Rodriguez* Hearing

Petitioner argues that a hearing pursuant to *United States v. Wade*, 338 U.S. 218 (1967), should have been held prior to trial. Specifically, in his petition, Allan argues that he requested a "*Wade/Rodriguez*" hearing but the request was denied based on the allegations provided within the prosecution's affirmation in opposition. (Pet. at 14.) Petitioner argues that, though Shaneka Jackson's trial testimony corroborated the information set forth in the affidavit, the government opposed petitioner's C.P.L. § 440.10 motion to vacate the conviction based on the testimony of Giselle Douglas. (*Id.* at 14-15.)

To the extent petitioner argues that the prosecutor's misinformation denied him his right to due process, such a claim must fail. There was no misinformation in this case, as it is clear from the trial testimony that both Shaneka Jackson and Giselle Douglas had the ability to confirm the identification of petitioner. Thus, petitioner's claim is legally insufficient. Because petitioner essentially argues that a *Wade* hearing should have been held, the Court will address this claim separately.

"A *Rodriguez* hearing is held to determine whether the identification of a defendant is confirmatory in nature, that is, whether the witness had sufficient familiarity with the defendant to eliminate the issue of police suggestiveness in the

identification process. If the court determines that the identification was not confirmatory, then a *Wade* hearing must be held." *Hankins v. Smith*, No. 03 Civ. 5404(WHP)(KNF), 2008 WL 4601000, at *12 (S.D.N.Y. Oct. 15, 2008); *see also People v. Rodriguez*, 593 N.E.2d 268, 271 fn* (N.Y. 1992) (identification by citizen who knows the defendant is more accurately described as "a conclusion that no *Wade* hearing is necessary."). "The purpose of a *Wade* hearing is to determine [before] the trial whether pretrial identification procedures have been so improperly suggestive as to taint an in-court identification." *See Twitty v. Smith*, 614 F.2d 325, 333 (2d Cir. 1979) (citing *United States v. Wade*, 388 U.S. at 242). Generally the "failure to hold a hearing, even if erroneous, will not cross the threshold of a constitutional violation." *Alvarez v. Fischer*, 170 F. Supp. 2d 379, 384 (S.D.N.Y. 2001) (citing *Watkins v. Sowden*, 449 US 341 (1981)).

Here, it is clear that both Giselle Douglas and Shaneka Jackson knew the petitioner well and had sufficient familiarity with petitioner to eliminate the issue of police suggestiveness in the identification process. The trial record establishes that the petitioner was known to Giselle Douglas and Shaneka Jackson for several months prior to Riddick's murder. Petitioner was living at or around 28 Cypress Avenue, and both witnesses had an opportunity to view petitioner on the evening of the crime, specifically when petitioner sat at the kitchen table waiting for the victim to arrive. In addition, both Douglas and Jackson had a chance to view the petitioner within moments after they heard the loud bangs. Thus, the Court finds that Douglas and Jackson's relationship with petitioner made the identification "confirmatory," rendering a *Wade* hearing unnecessary.

Moreover, even if a constitutionally tainted identification was admitted at trial, that admission would be subject to harmless error analysis, namely that the error did not have a substantial and injurious effect or influence in determining the jury's verdict. *See Dunnigan v. Keane*, 137 F.3d 117, 130 (2d Cir. 1998) (citing *Brecht v. Abrahamson,* 507 U.S. 619, 623 (1993)). The combined effect of the evidence presented at trial and the testimony of other witnesses is more than sufficient to determine that the alleged tainted identification was not enough to have had a substantial and injurious effect or influence in determining the jury's verdict.

### c. Trial Court Errors

Petitioner argues that he is entitled to habeas relief because the state trial judge made various errors at trial. As set forth below, the Court disagrees.

### i. Improper Jury Instructions

### (1) Legal Standard

Jury instructions violate due process if they "fail[ ] to give effect to [the] requirement" that the prosecution must prove every element of a charged offense beyond a reasonable doubt. *See Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (per curiam). However, "a state prisoner making a claim of improper jury instructions faces a substantial burden." *DelValle v. Armstrong*, 306 F.3d 1197, 1200 (2d Cir 2002). The petitioner must establish that "'the ailing instruction by itself so infected the entire trial that the resulting conviction violat[ed] due process,' not merely [that] 'the instruction is undesirable, erroneous, or even universally condemned.'" *Id.* at 1201 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977)); *see also Middleton*, 541 U.S. at 437

(explaining that "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation").

(2) Application

(a) Circumstantial Evidence Instruction

Petitioner argues that the trial court described the evidence during jury instruction as being "solely circumstantial," but then went on to give a lengthy instruction on direct evidence and an apparently minimal instruction on circumstantial evidence. (Pet. at 12; Tr. at 1850.) Petitioner argues that this instruction was improper because the only evidence against him was circumstantial evidence. (Pet. at 12.) The Court disagrees.

In this case, the Court finds that the trial court's instructions on circumstantial evidence were not erroneous and certainly did not constitute a due process violation. First, the Court notes that the trial court's instructions were proper in all respects. The trial court delivered a proper circumstantial evidence instruction when he stated that "circumstantial evidence is direct evidence of a fact from which a person may reasonably infer the existence or nonexistence of another fact." (Tr. at 1848-49.) The trial court went on to give the jurors a basic example illustrating the differences between direct and circumstantial evidence. (*Id*. at 1849-50.) Following this example, the trial court went on to explain to the jury what it must do before it "may return a verdict of guilty…based solely upon circumstantial evidence." (*Id*. at 1850.) Contrary to petitioner's argument, the trial court was not describing the evidence in the case as being "solely circumstantial." Instead, the trial court was merely informing the jury of what it must do in case it does solely rely on

circumstantial evidence to reach a verdict. This was further supported by the trial court's instructions of what direct evidence is and how it differs from circumstantial evidence. (*Id*. at 1848-50.)

Even if this Court found that the prosecution's case was entirely reliant on circumstantial evidence and that the trial court's circumstantial evidence charge was insufficient in some way, that error would still not satisfy the substantial burden that petitioner must satisfy to obtain habeas relief on this issue.[11] The overwhelming amount of evidence presented by the prosecution against petitioner was strong enough that the improper instruction, if one existed, did not violate petitioner's due process rights.

In sum, the trial court's jury instructions clearly gave the jury adequate information on how to assess both the circumstantial and direct evidence in this case, and thus habeas relief is denied on this issue.

(b) Failure to Give Accomplice Instruction

Petitioner further argues that the trial court should have instructed the jury that Donald Johnson was an accomplice as a matter of law. (Pet. at 12.) Specifically, petitioner points out that Johnson testified that he acted as an accomplice with the intent to assist petitioner in what he thought to be a robbery of the victim. (*Id*.) Further, petitioner argues that Johnson stated that he aided petitioner by providing him with transportation, purchasing the alleged murder weapon, and disposing of the alleged murder weapon. (*Id*.) However, contrary to petitioner's arguments, the Court finds that

---

[11] Petitioner also challenges the trial court's instruction on the ground that the trial court failed to instruct the jury that the prosecution must prove beyond a reasonable doubt that Allan was in fact the man who killed Riddick. The Court finds that the trial court gave such an instruction. (Tr. at 1870-71.)

the trial court's failure to give the jury an accomplice instruction for Donald Johnson does not meet the standards of a federal constitutional violation.

Petitioner was not deprived of a federal constitutional right due to the trial court's decision to not give the jury an accomplice instruction relating to Donald Johnson. First, during petitioner's trial, there was no request that the court instruct the jury that Donald Johnson was an accomplice as a matter of law. Further, the evidence did not prove that Donald Johnson unquestionably or irrefutably aided petitioner in the murder of the victim. Whether a court should give the jury an accomplice instruction as a matter of law falls within the discretion of the trial judge and, thus, the Court cannot conclude based on this record that the trial court abused its discretion by failing to give an accomplice instruction. *Smithwick v. Walker*, 758 F. Supp. 178, 186 (S.D.N.Y. 1991) *aff'd*, 948 F.2d 1278 (2d Cir. 1991) (citing *Perez v. Metz*, 459 F.Supp. 1131 (S.D.N.Y. 1977)). In any event, any error in failing to give such an instruction would be insufficient to warrant habeas relief in light of the overwhelming evidence of guilt. Consequently, habeas relief is not warranted under these circumstances.

### ii. Shift in the Burden of Proof in its *Brady* Ruling

Petitioner argues that the trial court, in denying defense counsel's application for mistrial, shifted the burden of proof by proposing that defense counsel recall the prosecution's witness for further questioning regarding *Brady* material. (Pet. at 12-13.) This Court disagrees.

Trial courts have sound discretion regarding whether to declare a mistrial. *See Arizona v. Washington*, 434 U.S. 497, 510-11 (1978) (stating that a trial court's

determination of whether to declare a mistrial is accorded "the highest degree of respect").

The Court has concluded that there was no *Brady* violation at petitioner's trial. Thus, a mistrial based on an alleged *Brady* violation would have been inappropriate. The trial court acted properly when it denied petitioner's motion for a mistrial, and in any event, such a decision was within the trial court's sound discretion. Habeas relief is not warranted on this claim.

### iii. Introduction of Hearsay into Evidence

Petitioner also alleges that the trial court erred for allowing the introduction of hearsay into evidence. (Pet. at 13.) Specifically, petitioner argues that the trial court erred when it allowed the prosecution to introduce an out-of-court statement, particularly a statement that Shaneka Jackson made to another witness, identifying petitioner as the person who shot and killed the victim. (*Id.*)

For the reasons mentioned *supra*, Section III.B.1.a.ii., the Court finds that the statements fell within a recognized hearsay exception, and petitioner was not denied his constitutional right to a fundamentally fair trial. As a result, the trial court did not err by allowing Shaneka Jackson's statements into evidence.

### iv. In Court Identifications

Petitioner argues that the trial court erred by permitting several in-court identifications of petitioner without establishing an independent basis for their identification. (Pet. at 13.) Specifically, petitioner alleges that Rachel Moore (Tr. at 1222-23), Nicole Watson (Tr. at 1235), Portia Thompson (Tr. 1104-1105), Joseph Pita (Tr. at 1365), Tasheeya Williams (Tr. at 1478), and

Monique Parrish (Tr. at 1016) had limited opportunities to view petitioner during the months leading up to night of Riddick's death, yet were still permitted to identify petitioner in court, approximately two years after the incident occurred. (Pet. at 13.)

In *Manson v. Brathwaite*, the Supreme Court established the due process standard applicable to witness identifications. 432 U.S. 98 (1977). "That case concluded that 'reliability is the linchpin in determining the admissibility of identification testimony' and indicated that if identification testimony leads to 'a very substantial likelihood of irreparable misidentification,' it must be excluded to protect defendants' due process rights." *Samules v. Senkowski*, 77 F. App'x 69, 71 (2d Cir. 2003) (quoting *Manson*, 432 U.S. at 114, 116) (internal citation omitted).

There is nothing in the record to suggest that the witnesses made a pretrial identification of petitioner. Where a pretrial identification has not occurred, courts in the Second Circuit apply the *Manson* standard, which may be applied through the use of the factors set forth in *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). *See Kennaugh v. Miller*, 289 F.3d 36, 46-47 (2d Cir. 2002); *see also Parson v. Keith*, No. CIV-07-997-M, 2008 WL 2568385, at *13 n.16 (W.D. Okla. June 24, 2008) (noting that several Circuits have applied the *Biggers* factors where there is a challenge to an in-court identification that does not follow an earlier pre-trial identification). The reliability of eyewitness identification is determined by weighing five factors:

> [1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of the witness' prior description of the criminal, [4] the level of certainty demonstrated by the witness at the confrontation, and [5] the length of time between the crime and the confrontation.

*United States v. Butler*, 970 F.2d 1017, 1021 (2d Cir. 1998) (quoting *Biggers*, 409 U.S. at 199-200).

The Court finds, after considering the *Biggers* factors, that there is no basis to conclude that the previously mentioned six witnesses' identification of petitioner was unreliable or improper. Rachel Moore and Nicole Watson spoke to petitioner for several minutes only a few hours before Riddick was shot (Tr. at 1219-25, 1237-39). Moore spoke to petitioner at a short distance (Tr. at 1219-1221), and Watson had observed petitioner on previous occasions. (Tr. at 1234-35.) Both had observed petitioner with attention, and Moore even took down petitioner's phone number. (Tr. at 1224.) Both Moore and Watson identified petitioner with certainty at the trial. Portia Thompson, Joseph Pita, and Tasheeya Williams saw and/or spoke to Petitioner within minutes after Riddick was shot (Tr. at 1107-10, 1363-65, 1477-81). Portia Thompson and Tasheeya Williams had seen petitioner one week before at 28 Cypress Avenue. (Tr. at 1108, 1477-78.) Tasheeya Williams observed petitioner for the entire ride between 28 Cypress Avenue and the Citgo gas station. (Tr. 1479-82.) Both witnesses demonstrated their attention to petitioner's identity by connecting him with a previous encounter and his dog, and were certain in their identifications of petitioner at trial. Joseph Pita had observed petitioner on prior occasions (Tr. at 1363-64), and spoke with petitioner at close range shortly after Riddick was killed. (Tr. at 1377.) Joseph Pita was certain in his identification of petitioner at trial. (Tr. at 1364.) Monique Parrish had known petitioner for several

months prior to the shooting and death of Riddick. (Tr. at 1016). Though nearly three years had passed between the witnesses' observations and the trial, there is nothing to suggest their identifications were unreliable.

Moreover, petitioner's trial counsel cross-examined three of the aforementioned witnesses whose ability to identify petitioner is in dispute, and had an opportunity to cross-examine all six about any inconsistencies in their testimonies. Under these circumstances, there is no basis to disturb the jury's finding. *See United States v. Valenzuela*, 722 F.2d 1431, 1433 (9th Cir. 1983) ("With respect to identification evidence, the Due Process Clause protects solely an evidentiary interest . . . , an interest normally vindicated through the adversarial process of cross-examination." (internal citation omitted)). As a result, the trial court did not err by allowing the aforementioned six witnesses to identify petitioner at trial.

2. Claims Properly Before This Court

Petitioner makes two claims that are not procedurally barred: (1) that the evidence presented at trial was insufficient to support a finding of guilt beyond a reasonable doubt; and (2) that his trial counsel was ineffective.

a. Insufficiency of the Evidence

Petitioner claims that the evidence presented at trial was insufficient to support a finding of guilt beyond a reasonable doubt. However, viewing the evidence in the light most favorable to the prosecution, a rational jury could have found guilt beyond a reasonable doubt. Therefore, the Appellate Division's finding that the evidence was sufficient was not contrary to, or based on an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the entire record. Thus, habeas

relief on this claim is denied.

i. Legal Standard

The law governing habeas relief from a state conviction based on insufficiency of the evidence is well established. A petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence in an application for a writ of habeas corpus. *Einaugler v. Sup.Ct. of the State of N.Y.*, 109 F.3d 836, 840 (2d Cir. 1997) (quoting *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993)).

A criminal conviction in state court will not be reversed if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Policano v. Herbert*, 507 F.3d 111, 115-16 (2d Cir. 2007) (stating that "[i]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt" (quoting *Jackson*, 443 U.S. at 324)); *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) ("[W]e review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial."). A criminal conviction will stand so long as "a reasonable mind 'might fairly conclude guilt beyond a reasonable doubt.'" *United States v. Strauss*, 999 F.2d 692, 696 (2d Cir. 1993) (quoting *United States v. Mariani*, 725 F.2d 862, 865 (2d Cir. 1984)). Even when "faced with a record of historical facts that supports conflicting inferences [a court] must

presume – even if it does not affirmatively appear in the record – that the trier of fact resolves any such conflicts in favor of the prosecution, and must defer to that resolution." *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994) (quoting *Jackson*, 443 U.S. at 326).

A habeas petitioner cannot prevail on a claim of legally insufficient evidence unless he can show that, viewing the evidence in the light most favorable to the prosecution, "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Flowers v. Fisher*, 296 F. App'x 208, 210 (2d Cir. 2008) (quoting *Jackson*, 433 U.S. at 324). When considering the sufficiency of the evidence of a state conviction, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

### ii. Application

Petitioner argues that there were a variety of gaps and contradictions in evidence presented at trial such that the totality of the evidence was insufficient as a matter of law to prove his guilt. Particularly, petitioner points out that: (1) the basement area was "pitch black;" (2) Giselle Douglas, who testified as to having seen petitioner standing over the victim's body with a gun in his hand, failed to mention the gun to police or before the grand jury; (3) Shaneka Jackson was unable to offer that the "Black female" who was standing in front of her when she arrived at the room where the victim was shot was Giselle Douglas, even though Jackson had known and seen Douglas on a daily basis for over eleven years; (4) Donald Johnson failed to inform police about his transaction with petitioner for the aforementioned gun until a year after the incident, at which time Johnson had been arrested for vehicular assault; (5) police never found the handgun that petitioner had allegedly used to kill the victim and then sold to Johnson; and (6) fingerprints recovered from the locations that petitioner had occupied moments before and after the incident occurred, did not belong to petitioner. (Pet. at 3-7.) However, despite petitioner's arguments, when viewing the evidence in the light most favorable to the prosecution, a rational jury could have still found guilt beyond a reasonable doubt.

The prosecution presented overwhelming evidence from which a rational trier of fact could conclude beyond a reasonable doubt that the petitioner was guilty of the crime charged. Jurors heard the testimony of Giselle Douglas, Shaneka Jackson and Joe Pita, Tasheeya Williams and Donald Johnson, among others, who testified that: (1) petitioner planned to rob Riddick on the night of September 7, 2001; (2) petitioner was present at 28 Cypress Avenue on the night of Riddick's murder and followed Riddick to the basement shortly after Riddick arrived at the house; (3) moments after loud bangs were heard in the basement, petitioner was standing over the victim's body holding a gun in one hand and patting down the victim's body with the other; (4) while standing over Riddick's body, petitioner stated "Mother f****r, I finally got you;" (5) immediately after Riddick's death petitioner fled 28 Cypress Avenue in Riddick's car with Riddick's young cousin inside the car; (6) petitioner drove to a prearranged meeting with Donald Johnson in Riddick's car and stated that he "had to clap that n****r…[because]…he wasn't going to give it to me;" and (7) petitioner handed Donald Johnson a gun that smelled as though it had been recently fired. This evidence, viewed in conjunction with the testimony from the additional twenty-two witnesses mentioned *supra*, could have led a rational juror to conclude beyond a

reasonable doubt that petitioner had the intent, means and opportunity to commit the second-degree murder crime of Javon Riddick, and did so.

In sum, the Appellate Division's conclusion that the evidence was sufficient for a conviction on the charge of murder in the second degree is not contrary to, or an unreasonable application of, clearly established federal law, nor is it based on an unreasonable determination of the facts. Therefore, habeas relief is denied on this claim.

### b. Ineffective Assistance of Counsel

Petitioner argues that his trial counsel was ineffective, thus depriving him of his constitutional right to counsel. Specifically, petitioner argues that his trial counsel's assistance was ineffective when it failed to: (a) object to the court's improper circumstantial evidence charge; (b) request that the court give an accomplice instruction to the jury; (c) request a hearing to establish the basis for several in-court identifications; (d) request jury instructions on each element of the charged crime; (e) object to the introduction of hearsay testimony; and (f) object to several comments made by the prosecutor during her summation. The Appellate Division concluded that petitioner was not deprived of the effective assistance of counsel because any deficiencies in trial counsel's performance did not prejudice the defendant. As set forth herein, the record as a whole demonstrates that petitioner received effective representation, and the Appellate Division's decision on that issue was neither contrary to, nor based on an unreasonable application of, clearly established federal law. Therefore, this Court denies habeas relief.

### i. Legal Standard

Under the standard promulgated by *Strickland v. Washington*, 466 U.S. 688 (1984), a petitioner is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694.

The first prong requires a showing that counsel's performance was deficient. However, "constitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). The performance inquiry examines the reasonableness of counsel's actions under all circumstances, keeping in mind that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Id.* at 319 (quoting *Rompilla v. Beard*, 545 U.S. 374, 408 (2005)). In assessing performance, a court must apply a "heavy measure of deference to counsel's judgments." *Id.* at 319 (quoting *Strickland*, 466 U.S. at 691). "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision," *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 588 (citing *Strickland*, 466 U.S. at 690-91). Moreover,

"strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.*

The second prong focuses on prejudice to the petitioner. The petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. In this context, "reasonable probability" means that the errors were of a magnitude such that they "undermine[] confidence in the [proceeding's] outcome." *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland,* 466 U.S. at 694). "The question to be asked in assessing the prejudice from counsel's errors . . . is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Henry v. Poole*, 409 F.3d 48, 63-64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695). "'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (quoting *Strickland,* 466 U.S. at 691). Moreover, "[u]nlike the determination of trial counsel's performance under the first prong of *Strickland*, the determination of prejudice 'may be made with the benefit of hindsight.'" *Hemstreet v. Greiner*, 491 F.3d 84, 91 (2d Cir. 2007) (quoting *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994)).

This Court proceeds to examine the petitioner's claim, keeping in mind that the habeas petitioner bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004).

ii. Analysis

Petitioner claims that defense counsel was deficient for failing to (a) object to the court's improper circumstantial evidence charge; (b) request that the court give an accomplice instruction to the jury; (c) request a hearing to establish the basis for several in-court identifications; (d) object to the introduction of hearsay testimony; and (e) object to several comments made by the prosecutor during her summation. These actions were objectively reasonable, and they did not prejudice the petitioner. Therefore, the Court rejects petitioner's claim of ineffective assistance of counsel.

(1) Failure to Object to Circumstantial Evidence Charge

Petitioner alleges that trial counsel was ineffective for failing to object to the trial court's circumstantial evidence charge given during jury instruction. (Pet. at 10.) Specifically, petitioner argues that the state trial court described the evidence during jury instruction as being "solely circumstantial," but then went on to give a lengthy instruction on direct evidence and an apparently minimal instruction on circumstantial evidence. (Pet. at 12.)

Here, petitioner's claim fails to satisfy the first prong of *Strickland*. As stated *supra*, the Court finds that the trial court's instruction on direct and circumstantial evidence was entirely proper under New York law. For the reasons mentioned *supra*, the Court finds that the trial court's circumstantial evidence charge was proper. Nonetheless, even assuming *arguendo* that the trial counsel's performance was constitutionally defective, petitioner's claim would still fail because he has not demonstrated prejudice, as required by the second prong of the *Strickland* test. The trial court gave an instruction on

circumstantial evidence, and given the overwhelming evidence against petitioner, he suffered no prejudice as a result of his counsel's conduct.

## (2) Failure to Request an Accomplice Instruction

Petitioner alleges that trial counsel was ineffective for failing to request an instruction from the trial court that Donald Johnson was an accomplice as a matter of law. (Pet. at 10.) Specifically, petitioner argues that Johnson testified that he acted as an accomplice with the intent to assist petitioner in what he thought would be a robbery of the victim. (Pet. at 12.) Further, petitioner argues that Johnson stated that he aided Petitioner by providing him with transportation, purchasing the alleged murder weapon, and disposing of the alleged weapon by tossing it into a pond. (*Id.*)

Here, petitioner's claim fails to satisfy the first prong of *Strickland*. As stated *supra*, it was within the trial court's discretion to instruct whether a person acted as an accomplice as a matter of law, and the evidence did not prove Donald Johnson unquestionably and irrefutably aided petitioner in Riddick's murder. Thus, the failure to raise such a request was not objectively unreasonable. Nonetheless, even assuming *arguendo* that the trial counsel's performance was constitutionally defective, petitioner's claim would still fail because he has not demonstrated prejudice, as required by the second prong of the *Strickland* test. Given the overwhelming evidence against petitioner, petitioner cannot demonstrate prejudice as a result of his counsel's failure to request an instruction that Donald Johnson was an accomplice as a matter of law.

## (3) Failure to Request Jury Instructions on Each Element of the Charged Crime

Petitioner argues ineffective assistance of counsel because his defense counsel at trial failed to request a proper and complete charge when the trial court charged the jury with only one element of the charged crime. (Pet. at 10.) This court disagrees.

During the jury instructions, the trial court stated that "a person is guilty of Murder in the Second Degree when, with intent to cause the death of another, he causes the death of such person." (Tr. at 1870.) While the trial court then provided a multiple page analysis of the intent element, the trial court also clearly stated to the jury that in order to find the Defendant guilty of Murder in the Second Degree the People must have proven both of the aforementioned elements beyond a reasonable doubt. (Tr. at 1870-71.) Thus, counsel made no error in connection with any failure to object to that instruction.

## (4) Failure to Request a Hearing for Several In-Court Identifications

Petitioner argues ineffective assistance of counsel because his defense counsel at trial failed to request an evidentiary hearing to establish the basis for several improper in-court identifications of petitioner. (Pet. at 10). Specifically petitioner alleges that Rachel Moore (Tr. at 1222-23), Nicole Watson (Tr. at 1235), Portia Thompson (Tr. 1104-1105), Joseph Pita (Tr. at 1365), Tasheeya Williams (Tr. at 1478), and Monique Parrish (Tr. at 1016) had limited opportunities to view petitioner during the months leading up to night of Riddick's death, yet were still permitted to identify Petitioner in court, approximately two years after the incident occurred. (Pet. at 13). This Court disagrees.

Here, petitioner's claim fails to satisfy the first prong of *Strickland*. As stated *supra*, the Court finds that the in-court identifications by all of the witnesses were proper under the due process clause. Nonetheless, even assuming *arguendo* that the trial counsel's performance was constitutionally defective, petitioner's claim would still fail because he has not demonstrated prejudice, as required by the second prong of the *Strickland* test. In light of the prosecution's overwhelming evidence against petitioner, the in-court identifications did not create a reasonable probability that but for counsel's failure to request an evidentiary hearing, the trial outcome would have been different. Accordingly, the petitioner cannot demonstrate ineffective assistance of counsel due to counsel's failure to seek an evidentiary hearing regarding these identifications.

### (5) Failure to Object to the Introduction of Hearsay Testimony

Petitioner alleges that trial counsel was ineffective for failing to object to hearsay evidence. (Pet. at 10.) Specifically, petitioner finds objectionable his counsel's failure to object to the trial court's allowance of certain testimony from Shaneka Jackson. (*Id*.)

Here, petitioner's claim fails to satisfy the first prong of *Strickland*. As stated *supra*, the Court finds that the trial court's admittance of the disputed statements into evidence was proper under New York law, since had an objection been made, the statement would have been admissible as an excited utterance. Nonetheless, even assuming *arguendo* that the trial counsel's performance was constitutionally defective, petitioner's claim would still fail because he has not demonstrated prejudice, as required

by the second prong of the *Strickland* test. In light of the prosecution's overwhelming evidence against petitioner, the admission of the alleged hearsay testimony at issue did not create a reasonable probability that but for counsel's failure to object, the trial verdict would have been different. Accordingly, the petitioner cannot demonstrate ineffective assistance of counsel due to counsel's failure to object to hearsay.

### (6) Failure to Object to Prosecutorial Summation Comments

Petitioner also contends that he received ineffective assistance of trial counsel because counsel failed to make the appropriate objections during the prosecutor's summation. (Pet. at 10.) Specifically, petitioner objects to statements by the prosecutor that "commented on matters not in evidence, gave unsworn and expert testimony and excessively vouched for the credibility of the witnesses." (*Id.*)

First, petitioner has not satisfied the first prong of *Strickland* because he is unable to demonstrate that counsel's representation fell below an objective standard of reasonableness. There are strategic reasons that an attorney might "forgo objections: the conclusion that additional objections might have annoyed the judge or jury; the possibility that the prosecutor, given enough rope, would alienate the jury; the desire not to call attention to unfavorable evidence or to highlight unfavorable inferences." *Taylor v. Fischer*, No. 05 Civ. 3034(GEL), 2006 WL 416372, at *5 (S.D.N.Y. Feb. 21, 2006). Thus, even if some of the comments during summations were objectionable (even though the Court has found *supra* that the comments were not objectionable), counsel is not necessarily deficient for not objecting. It is also apparent that petitioner's counsel objected to some of the allegedly

objectionable comments during summation. (Tr. at 1813.)

In any event, even assuming *arguendo* that petitioner was able to show that counsel's performance was deficient, petitioner cannot show that he was prejudiced as a result. As an initial matter, evidence of the petitioner's guilt was overwhelming, as discussed *supra*. Furthermore, any prejudicial impact of the statements was neutralized by the trial judge's instructions to the jury, discussed *supra*. Thus, even if there were any deficiencies by counsel in failing to object to the prosecutor's statements, the trial judge took curative steps to ensure neither side was prejudiced. Accordingly, petitioner cannot satisfy the second prong of *Strickland*. In short, this claim has no merit.

IV. CONCLUSION

In sum, the petitioner's claims regarding prosecutorial misconduct, improper denial of a *Wade/Rodriguez* hearing, and trial court errors are procedurally barred. All of petitioner's claims, when evaluated on the merits, fail to warrant habeas relief. Thus, the petition must be denied in its entirety. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: January 10, 2012
Central Islip, New York

\*\*\*

Petitioner is proceeding *pro se*. Respondent is represented by Thomas J. Spota, District Attorney of Suffolk County, by Thomas C. Costello, Assistant District Attorney, District Attorney's Office, 200 Center Drive, Riverhead, NY 11901.